**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **ROGER A. FULLER,** *et al.,* ) | **CASE NO. 1:10-CV-02453 LW** |
| ) | |
| **Plaintiffs,** ) | |
| ) | **JUDGE LESLEY WELLS** |
| **v.** ) | |
| ) | |
| ) | **PLAINTIFFS' BRIEF IN** |
| **LERNER, SAMPSON, AND** ) | **OPPOSITION TO DEFENDANTS'** |
| **ROTHFUSS,** *et al.,* ) | **MOTION TO DISMISS** |
| ) | |
| ) | |
| **Defendants.** ) | |

Plaintiffs Roger L. Fuller and Barbara A. Fuller ("the Fullers") oppose the motion to

dismiss by Defendants Lerner, Sampson, and Rothfuss ("LSR") and Nicholas D. Donnermeyer

("Donnermeyer") for the following reasons.

## I. STANDARD TO BE APPLIED

When deciding a motion to dismiss under F.R.C.P. Rule 12(b)(6), actual allegations in

the pleading along with reasonable inferences therefrom must be accepted as true.[1]  A motion to

dismiss under Rule 12(b)(6) "should not be granted unless it appears beyond a reasonable doubt

that the Plaintiff can prove no set of facts in support of his claim that would entitled him to

relief."[2] The issue is not whether a plaintiff will ultimately prevail, but whether a complaint

---

[1] ***Scheuer v. Rhodes,*** 416 U.S. 232, 236 (1974) ("***Scheuer***").

[2] ***Conley v. Gibson***, 355 U.S. 41, 45-46 (1957).

contains enough facts to state a claim for relief that is plausible on its face [3] and the plaintiff is entitled to offer evidence to support his claims.[4]

Thus, a complaint will be dismissed only if there is no law to support claims or if the facts are insufficient to support a claim, or if on the face of the complaint there is an insurmountable bar to relief.[5]  Motions to dismiss are viewed with disfavor and, therefore, rarely granted.[6]The Rule 12(b)(6) motion by LSR and Donnermeyer must be directed solely at the Fullers' Complaint and the eleven attached exhibits.[7]

## II. <u>THE CLAIM PRESENTED BY THE FULLERS</u>

The Fullers charge that LSR and Donnermeyer violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq*. ("FDCPA"), by actions that included, but were not limited to, the use of false, deceptive, and/or misleading representations in connection with the collection of a debt. 15 U.S.C. § 1692e.  The initial sentence of 15 U.S.C. §1692e contains broad language that enables courts to proscribe improper conduct that is not expressly covered in various subsections.[8]  The Sixth Circuit has noted that the Act is "extraordinarily broad" and must be enforced as written, even when eminently sensible exceptions are proposed in the face of

---

[3] ***Bell Atlantic Corp. v. Twombly***, 550 U.S. 544 (2007).

[4] ***Scheuer,*** 416 U.S. at 236.

[5] ***Rauch v. Day and Night Mfg. Corp***. 576 F.2d 857, 858 (6th Cir. 1976).

[6] 5A Wright and Miller, Federal Practice and procedure, 1357 (2d ed. 1990).

[7] ***Roth Steel Prod. v. Sharon Steel Corp***., 705 F. 2d 134, 155 (6th Cir. 1983); ***see also*** Rule 12(d).

[8] S.Rep. No. 382, 95th Cong. 1st sess. 4, at 4, reprinted in 1977 U.S.C.C.A.N. 1695,1696.

innocent and/or *de minimis* violations.[9] A single or technical violation is sufficient to incur liability.[10]

A "least sophisticated" consumer standard is utilized by the FDCPA to obviate the need to prove actual deception.[11]  No proof of intent is necessary for an actionable claim.[12]  The FDCPA applies to litigation activity by attorneys[13] and to pleadings and testimonial documents filed by attorneys in state court actions that contain false representations.[14] The FDCPA has a one year statute of limitations from the date of a violation.[15] Thus, the reference date for an actionable FDCPA claim in this case is one year prior to the date on which the Fullers' Complaint was filed: October 28, 2009. However, allegations in the Fullers' Complaint about conduct that occurred prior to that time may be used as contextual support for their claim.[16]

---

[9] *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992); *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 592 (6th Cir. 2009).

[10] *Kistner v. Law Offices of Michael P. Margelefsky*, 518 F.3d 433, 438 (6th Cir. 2008) ("The statute imposes strict liability for violations."); *Baker v. G.C. Services Corp.*, 677 F.2d 775 (9th Cir. 1982); *Edwards v. McCormick*, 136 F. Supp.2d 795, 800 (S.D. Ohio 2001).

[11] *Gionis v. Javitch, Block, and Rathbone, L.L.P.*, 238 F. Appx. 24 (6th Cir. 2007). *See also, Jeter v. Credit Bureau, Inc.*, 750 F.2d 1168 (11th Cir. 1985); and Fuller *v. Becker & Poliakoff, P.A.*, 192 F. Supp. 2d 1361 (M.D. Fla. 2002).

[12] *Allen v. Checkredi of Kentucky, L.L.C.*, 2010 WL 4791947 (E.D. Ky. 2010).

[13] *Heintz v. Jenkins*, 514 U.S. 291 (1995); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich*, --- U.S. ---, 130 S.Ct. 1605 (2010).

[14] *Hartman v. Asset Acceptance Corp.*, 467 F.Supp.2d 769 (S.D. Ohio 2004) (affidavit filed in state court represented to consumers that collection company was holder-in-due course when it was not) ("*Hartman*"); *Miller v. Wolpoff and Abramson*, 321 F.3d 292, (2d Cir. 2003) (verified complaint in state court); *Gearing v. Check Brokerage Corp*. 233 F.3d 469 (7th Cir. 2000).

[15] 15 U.S.C. § 1692k(d).

[16] *Mathius v. Omnium Worldwide*, 2005 WL 3159663 (D. Or. November 27, 2005).

### III. THE FULLERS PLEAD SUFFICIENT FACTS
### TO STATE A PLAUSIBLE CLAIM FOR RELIEF

On March 12, 1998 the Fullers refinanced the mortgage on their Elyria, Ohio residence through Resource Bancshares Mortgage Group, Inc. ("RBMG").[17] RBMG was acquired by Netbank which was placed into receivership under the FDIC in September 2007 and liquidated through Chapter 11 bankruptcy the following year.[18]

### A. Maintenance of the First Foreclosure Action Violated the FDCPA.

The Fullers allege that LSR maintained the first foreclosure action (after October 28, 2009) without establishing that the Plaintiff held the Note on which the action was based or was the owner of the debt that the Note represented, and thus LSR knew that it lacked the means to prove that the Fullers owed a debt to the Plaintiff. [19] Those contentions are bolstered by facts alleged in the Fullers' Complaint and attached exhibits.

LSR prepared a foreclosure complaint that it filed against the Fullers on behalf of Countrywide Home Loans Servicing, L.P. ("Countrywide") on March 3, 2009.[20] BAC Home Loans Servicing was later substituted as Plaintiff. LSR filed a notice of dismissal without prejudice on February 19, 2010. [21] The Complaint stated, inter alia, that Countrywide was the holder of a note, a copy of which was attached as Exhibit A.[22] The exhibit was a "certified true"

---

[17] Complaint at ¶ 9 (Doc. 1 at 2).

[18] Complaint at ¶ 11 (Doc. 1 at 3); *and see* Press Release, Office of Thrift Supervision at http://www.ots.treas.gov/_files/777071.html. *See also, In re Netbank*, No. 3:07-bk-04295-JAF (Bankr. M.D. Fl., September 28, 2007).

[19] Complaint at ¶ 24 (Doc. 1 at 5).

[20] Complaint at ¶ 12 (Doc. 1 at 3) and Countrywide Complaint, Exhibit 4 (Doc. 1-1 at 9-22).

[21] Complaint at ¶ 22 (Doc. 1 at 5).

[22] See Countrywide Complaint Exhibit 4 (Doc. 1-1 at 9-22).

copy of a promissory note   payable to Resource Bancshares Mortgage Group, Inc. which did not contain any indorsement.[23]

Twenty days after LSR filed the foreclosure complaint, its employee Shellie Hill, executed a mortgage assignment as an officer of Mortgage Electronic Registrations Systems, Inc. ("MERS") that assigned the Fullers' promissory note and mortgage to Countrywide.[24] The Fullers allege that Hill lacked authority to negotiate the Note.[25] LSR recorded the assignment and filed it with the court. Courts have found that written communication that creates a false impression as to its source, authorization, or approval violates the FDCPA.[26] Further, Ohio courts have held that an assignment may not be used to negotiate a mortgage note.[27] And it is a well-established rule of law in Ohio that an assignment of a mortgage without indorsement of the related note does not give the assignee the right to foreclose on the mortgage.[28] Courts in Ohio also have held that a plaintiff lacks standing where it files a mortgage assignment after commencing a foreclosure action.[29] Standing is jurisdictional in nature and cannot be cured.[30]

---

[23] *Id.*

[24] Complaint at ¶ 13 (Doc. 1 at 3), and Exhibit 5 (Doc. 1-1 at 23-24).

[25] Complaint at ¶ 14 (Doc. 1 at 3).

[26] *Cf. Ison v. Javitch Block*, 2007 WL 2769674 (S.D. Ohio 2007); *Williams v. Javitch Block*, 2007 WL 949662 (S.D. Ohio 2007); *see also* 15. U.S.C. § 1692e (9).

[27] *In re Wells*, No. 08-17639 (Bankr. N.D. OH 2009); *U.S. Bank Nat'l Assn. v. Marcino* (Ct. App. 12th Dist. 2009), 181 Ohio App.3d 328 (citing *Edgar v. Haines* (1923), 109 Ohio St. 159, 164, 141 N.E. 837) (mortgage is incident to promissory note and not the reverse).

[28] *Kernohan v. Manss* (1895), 53 Ohio St.118, 41 N.E.258. *Anderson v. Messinger*, 146 F.929 (6th Cir. 1906); *Mullin v. Claremont Realty Co*., 39 Ohio App.103, 177 N.E.  226 (1st Dist. Hamilton Co. 1930). *See also, Kuck v. Sommers* (1950), 100 N.E.2d 68, 75, 59 Ohio L. Abs. 400. Also see  Restatement (Third) of Property (Mortgages) §5.4. Comment.

[29] *Wells Fargo Bank v. Jordan*, 2009-Ohio-1092; *U.S. Bank Natl. Assn. v. Duvall*, 2010-Ohio-6478, *Deutsche Bank Natl. Trust Co. v. Triplett*, 2011-Ohio-478.

On October 28, 2009 LSR filed an Amended Affidavit as to Real Party in Interest ("Affidavit") in response to the motions and briefs filed on behalf of the Fullers that sought dismissal based upon lack of standing and subject matter jurisdiction.[31] The Affidavit was drafted by LSR attorney Rachel Pearson. It was identical to an earlier version drafted that she drafted and filed on September 18, 2009 except for changes that Pearson made to the fifth paragraph.  In the first version Pearson wrote that BAC "purchased" the promissory note and mortgage while the term "purchased" was removed from the second version.  The affidavit was signed by Lisa Allinson as Vice President of BAC.[32]  Beginning with the first paragraph, the document was replete with conflicting statements and outright misrepresentations in violation of the FDCPA.

The affidavit contained two blank lines in which Allinson's name and title were handwritten. It also was signed and notarized in Ventura County, California but drafted by Rachel Pearson, an attorney in LSR's Cincinnati, Ohio office.[33] Presumably exhibits mentioned in the document that were to have been attached were supplied by Pearson. A reasonable inference drawn from the format for the affidavit is that the identity of the affiant was unknown at the time the document was drafted but the person whose name was printed in the blanks and who signed it would simply swear to what Ms. Pearson had written. The format of the document

---

[30] ***Proctor & Gamble Co. v. Paragon Trade Brands, Inc***., 917 F. Supp. 305 (D. Del. 1995); ***In re Foreclosure Cases, supra*** at 3; **Switzer Bros. v. Byrne**, 242 F. Supp.2d 909 (6th Cir. 1957); ***but see, Whittaker v. Deutsche Bank Nat. Trust Co***., 605 F. Supp.2d 914 (N.D. Ohio 2009).

[31] Complaint at ¶ 20 (Doc. 1 at 4-5) and Exhibit 7 (Doc. 1-1 at 42-59).

[32] *Id.*

[33] *Id.*

conflicted with the statement in the first paragraph that all of the averments were based on personal knowledge. [34]

The most glaring misrepresentation in the affidavit is the fact that no indorsed note was attached to it despite the averments in the document that BAC was a "holder" and had physical possession of the Note originally signed by Roger Fuller.

Paragraph five of the affidavit stated that BAC "took possession" and became "holder" of the Fuller promissory note and mortgage on July 19, 2007.[35]  In paragraph 11, the affidavit stated that BAC "become the holer of the note (sic)" on July 19, 2007 and retained physical custody of the original instrument. [36] Paragraph six stated that a "true and accurate" copy of the original Note signed by Roger Fuller was attached.[37]

A "holder" is defined as: (a) a person in possession of the instrument where it is made payable to bearer; and (b) the identified person in possession where the instrument is made payable to that identified person.[38] An instrument is made payable to bearer when it: (1) states that it is payable to bearer or to the order of bearer; (2) it does not state a payee; (3) it is payable to "cash" or to "order of cash" or indicates that it is not payable to an identified person.[39]  The copy of the note attached to the affidavit was identical to the one attached to the foreclosure

---

[34] Amended Affidavit, Exhibit 7 at ¶ 1 (Doc. 1-1 at 43).

[35] Amended Affidavit, Exhibit 7 (Doc. 1-1 at 42-59).

[36] *Id.*

[37] *Id.*

[38] R.C.§ 1301.01(T)(1)(a) and (b).

[39] R.C.§ 1303.10(A).

complaint and was not indorsed, thereby rendering the averment of holder status false. [40]  BAC did not obtain holder status simply because a copy of the note was attached to the amended affidavit and the complaint.[41]  A MERS Milestone Report was attached to evidence "the transfer of the loan to Plaintiff"[42] but which only listed BAC as a "subservicer" while identifying Natixis Real Estate Capital, Inc. as both the "investor" or owner and "servicer" of the Fullers' mortgage loan.[43]  The MERS Report did not show a July 19, 2007 acquisition date.[44]

LSR dismissed its case without prejudice on February 19, 2010 shortly after receipt of written discovery from the Fullers and without ever proving that BAC was a holder of the original Note and entitled to enforce it.  Given the foregoing facts as alleged by the Fullers maintenance of the foreclosure action on and after October 28, 2009 violated the FDCPA.[45]

**B**. **Defendants Commenced and Maintained the Second Foreclosure Action Knowing that BAC Did Not Own the Fuller's Note and Mortgage.**

LSR and Donnermeyer prepared and filed a second foreclosure complaint against the Fullers on July 13, 2010 on behalf of BAC. [46] The Fullers allege on information and belief that when the Defendants drafted and filed that complaint they  knew the Fullers' Note and Mortgage were owned by the Federal Home Loan Mortgage Corporation ("Freddie Mac") [47] and that a

---

[40] Complaint at ¶ 19 (Doc. 1 at 4), and Exhibit 6 (Doc. 1-1 at 25-41).

[41] R.C. § 1303.22, comment (no presumption that party is entitled to payment by producing note which by its terms is payable to someone else).

[42] Exhibit 7 at ¶ 10 (Doc. 1-1 at 44).

[43] *Id*.

[44] *Id.*

[45] ***Hartman, supra***; ***Todd v. Weltman, Weinberg and Reiss*** 434 F.3d 432, 434 (6th Cir. 2006).

[46] Complaint at ¶ 28 (Doc. 1 at 6).

[47] Complaint at ¶ 32 (Doc. 1 at 7).

copy of an indorsed note was attached to the complaint in order to provide BAC with a facially valid pleading.[48]

Also attached to that complaint was a copy of a promissory note with the stamped indorsement in blank in the name of Cindi Callaham, Senior Vice President of RBMG.[49] Ms. Callaham served as Senior Vice President for mortgage operations at RBMG during the 1990s.[50] During that time RBMG began to use a blank indorsement stamp with her name on it to indorse mortgage notes although she did not personally use the stamp.[51] She moved to a different department in the Bank in 2001.[52]  Callaham cannot account for the differing versions of the promissory note offered by LSR in the two lawsuits against the Fullers nor can she account for the whereabouts of the stamp after Netbank was placed in receivership.[53] Since the Fullers' allegation concerning Freddie Mac is presumed to be true, and given the dogged reliance by LSR upon the unendorsed, "certified true" copy of the Note in the prior foreclosure case, and Callaham's statement, it is reasonable to infer that the indorsement on the copy of the note in the second foreclosure case was fabricated.  Such deceptive conduct would violate the FDCPA.[54]

In an effort to lend credibility to the assertion that BAC  held the Fuller Note since July 17, 2007 LSR prepared  two "corrective" mortgage assignments that were recorded on June 25, 2010. The "corrective assignments" deleted references to the Fuller Note contained in the two

---

[48] Complaint at ¶ 33 (Doc. 1 at 7).

[49] Complaint at ¶ 30 (Doc. 1 at 6-7).

[50] Cindi Callaham's Affidavit, attached hereto as Exhibit A.

[51] Cindi Callaham's Affidavit at ¶ 1.

[52] Cindi Callaham's Affidavit at ¶ 2

[53] Cindi Callaham's Affidavit at ¶¶ 1 and 4.

[54] *Hartman, supra*; see also 15 U.S.C. § 1692e (10).

previously recorded mortgage assignments.[55] The first corrective assignment was signed by Melissa Taylor as Assistant Secretary of defunct Netbank.[56] The second corrective assignment was signed by LSR employee Shellie Hill as Assistant Secretary and Vice President of MERS. It was notarized by Shelley R. Dirr, who is also employed by LSR.[57]

Both corrective assignments were attached to the second foreclosure complaint prepared by Donnermeyer but the two prior assignments at issue in the first foreclosure case were not attached.[58] Paragraph three of the complaint states that the mortgage dated March 23, 1998 was assigned to the Plaintiff as evidenced by the corrective assignments.[59]

Defendants carefully avoid discussion of the first corrective assignment in their F.R.C.P. 12(b)(6) motion for good reason.  The assignment is fraudulent on its face.  The Fullers allege that Taylor is listed as an employee of Bank of America in the Greater Los Angeles, California area by the business internet site LinkedIn.[60] Taylor acknowledged under oath that she signed the document in her authorized capacity as an officer of the non-existent business entity. LSR compounded the fraud by recording the document and filing it. Courts have found that filing of documents containing false information violates the FDCPA.[61]

---

[55] Complaint at ¶¶ 25 and 27 (Doc. 1 at 6).

[56] Complaint at ¶

[57] Complaint at ¶ 27 (Doc. 1 at 6), and Exhibit 10 (Doc. 1-1 at 64-65).

[58] Complaint at ¶ 28 (Doc. 1 at 6) and Exhibit 11 (Doc. 1-1 at 66-85).

[59] Exhibit 11 at ¶ 3 (Doc. 1-1 at 68-69).

[60] Complaint at ¶ 26 (Doc. 1-1 at 64-65), and Exhibit 9 (Doc. 1-1 at 63).

[61] *Hartman, supra*; *Veach v. Sheeks*, 316 F.3d 690, 691-692 (7th Cir. 2002).

## VI. <u>CONCLUSION</u>

For the forgoing reasons, Defendants' motion should be denied.

/s/ Edward A. Icove                                /s/ Philip D. Althouse_____
Edward A. Icove (0019646)                  Philip D. Althouse (0051956)
Icove Legal Group, Ltd.                         Legal Aid Society of Cleveland
Terminal Tower, Ste. 627                       538 West Broad Street, Ste. 300
50 Public Square                                     Elyria, OH 44035
Cleveland, OH 44113                            Phone (440) 323-8240
Phone (216) 802-0000                           Facsimile (440) 323-8526
Facsimile (216) 802-0002                      pdalthouse@lasclev.org
ed@icovelegal.com


/s/ Judith B. Goldstein_____
Judith B. Goldstein (0069655)
Equal Justice Foundation
88 East Broad Street, Ste. 1105
Columbus, OH 43215
Phone (614) 221-9800
Facsimile (440) 221-9810
jgoldstein@equaljusticefoundation.com

Attorneys for Plaintiffs


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document was filed electronically on February 18, 2011.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/Edward A. Icove
Attorney for Plaintiffs