COUNTY OF _RICHLAND_ )
                              )   **SS: AFFIDAVIT**
STATE OF SOUTH CAROLINA )

     Cindi Callaham, first having been duly sworn and cautioned, states and deposes the following:

1. My name is Cindi Callaham.

2. I received the attached letter from attorney Philip D. Althouse dated December 7, 2010. (Exhibit A).

3. I prepared a response to Mr. Althouse in a letter dated December 21, 2010 which was sent to Mr. Althouse by email. (Exhibit B).

4. The attached exhibits are true and accurate copies of the original documents and the statements in my letter to Mr. Althouse are true and accurate to the best of my knowledge and belief.

FURTHER AFFIANT SAYETH NAUGHT.

*/s/ Cindi Callaham*
**Cindi Callaham**

Sworn to and subscribed before me this _30_ day of _December_, 20_10_.

*/s/ Gwendolyn J. Nash*
Notary Public

My commission expires on _July 2_, 20_17_.

# The Legal Aid Society
*Since 1905*


EXHIBIT A

**Philip D. Althouse**
Attorney
Phone: 440.323.8240
Fax: 440.323.8526
Pdalthouse@lasclev.org

**Cuyahoga County**
& ADMINISTRATIVE OFFICES
1223 West Sixth Street
Cleveland, OH 44113
Phone: 216.687.1900
Toll-Free: 888.817.3777
Fax: 216.687.0779

**Ashtabula County**
121 East Walnut Street
Jefferson, OH 44047
Phone: 440.576.8120
Toll-Free: 866.873.9665
Fax: 440.576.3021

**Lake & Geauga Counties**
8 North State Street
Suite 300
Painesville, OH 44077
Phone: 440.352.6200
Toll-Free: 888.808.2800
Fax: 440.352.0015

**Lorain County**
538 West Broad Street
Suite 300
Elyria, OH 44035
Phone: 440.323.8240
Toll-Free: 800.444.7348
Fax: 440.323.8526

www.lasclev.org

7 December 2010

Ms. Cindi Callaham
Sr. Vice President
First Citizens Bank
1230 Main Street
Columbia, SC 29201

RE: Netbank

Ms. Callaham:

This is a follow up to a conversation that we had on November 23rd. I phoned you late that afternoon and asked a number of questions about Netbank. You told me that you served as Vice President for Resource Bancshares Mortgage Group (RBMG)/Netbank from 1994 to 2007 and during the last six years of your employment with the company you were not involved in mortgage transactions except for a few months in 2007 before Netbank was placed in receivership by the FDIC.

I described transactions and documents that involve a property that is the subject of a foreclosure case in which I represent the borrowers. The first transaction was an assignment from Netbank to MERS which also purportedly involved the transfer of the mortgage note. I have attached a copy of the document in question as Exhibit 1.. You told me that you would not have approved such transaction because it was not the policy of RBMG/Netbank to transfer a promissory note via an assignment and you did not transfer promissory notes to MERS.

I described a "corrective assignment" that was executed this past summer and have attached a copy of that document as Exhibit 2.. The "corrective assignment" deleted references to the note that were contained in the original assignment. You advised me that you were told by the FDIC that no one was permitted to execute any documents on behalf of RBMG/Netbank without approval.

Lastly, I discussed with you an indorsement that appeared on the promissory note filed along with the foreclosure complaint and have attached a copy of the note as Exhibit 3. The indorsement in question bears your stamped signature. You told me that you last used that stamp in 2001 but copies may have been available at a later date.

LSC

I asked if you would have used the indorsement stamp or had someone do it for you this past summer and you said that you would not. I did not ask but am curious about whether anyone other than you was authorized by RBMG/Netbank to use the indorsement stamp in question. I told you that I was confused by the sudden appearance of the indorsement because the "certified" copy that had been filed in a prior foreclosure case against the same parties was not indorsed. I have attached a copy of that document as Exhibit 4.

I did not ask you but am curious about why the mortgage assignment in which the note was also transferred would have been prepared and recorded if the original promissory note was indorsed by you. I would appreciate an answer to that question.

I would greatly appreciate it if you would be willing to provide an affidavit that confirms the substance of our discussion and references the attached documents. If so, please let me know as soon as possible and also advise on whether you would prefer to draft the document yourself or have me draft it. In the alternative or in addition to the affidavit, I would be happy to have a local attorney in Columbia conduct a brief records deposition so that your testimony could be recorded. Due to time constraints posed by litigation and the upcoming holiday, I would like to hear from you by December 16th at the latest.

Thanks for your help and I look forward to your response.

Yours truly,

Philip D. Althouse
Attorney

Encl.

(Page 1 of 1)

32-

Doc ID: 010011780001 Type: OFF
Kind: ASSIGNMENT
Recorded: 12/08/2006 at 09:13:28 AM
Fee Amt: $32.00 Page 1 of 1
Lorain County, Ohio
Judith M Nedwick County Recorder
File 2006-0179537

LOAN #:
POOL #: D88689
NETBANK #: 0000857977
INV #:
MIN #: 100014400008579777
MERS Phone #: 1-888-679-6377


EXHIBIT 1

STATE OF OHIO
COUNTY OF LORAIN

ASSIGNMENT OF MORTGAGE FROM CORPORATION

KNOW ALL MEN BY THESE PRESENTS:

That NETBANK
9710 Two Notch Rd Columbia SC 29223-9884
A Federal Savings Bank                  party of the first part, in consideration of a sufficient and valuable consideration received from or on behalf of Mortgage Electronic Registration Systems, Inc. party of the second part, at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, does hereby grant, bargain, sell, assign, transfer and set over unto Mortgage Electronic Registration Systems, Inc. the said party of the second part
whose address is G4318 Miller Rd. Flint MI 45801-2026
a certain mortgage bearing date 03/12/1998 made by
ROGER L. FULLER, A MARRIED MAN, HIS WIFE BARBARA A. FULLER

and recorded on 03/23/1998        Document Number/524665    Certificate/    Page/ and
in Official Records Book/1317,                County, Ohio, upon the following described piece or parcel of
public records of LORAIN
land, situate and being in said County and State.
PARCEL ID NUMBER: 06-25-070-103-009
LEGAL DESCRIPTION:
Not Required By County

Together with the note or obligation described in said mortgage, and the moneys due and to become due thereon, with interest from the date aforementioned.
To Have and to Hold the same unto the said party of the second part, its heirs, legal representatives, successors and assigns forever.

In Witness Whereof the party of the first part has caused these presents to be executed in its name, and its corporate seal to be hereunto affixed, by its proper officers thereunto duly authorized.

ATTEST: _____
G. Morant
Assistant Secretary

NETBANK

_____
A. Mcneil
Assistant Vice President

SEAL 1988

Signed, sealed and delivered in the presence of:

A. Kelly
A. Kelly
T. Kelly

STATE OF SC
COUNTY OF Richland
I HEREBY CERTIFY that on this day, before me an officer duly authorized in the State and County aforesaid to take acknowledgments personally appeared A. Mcneil       well known to me to be the    Assistant Vice President       and
and    G. Morant
Assistant Secretary respectively of the corporation named as party of the first part in the foregoing instrument, and that they severally acknowledged executing the same in the presence of two subscribing witnesses freely and voluntarily under authority duly vested in them by said corporation and that the seal affixed thereto is the true corporate seal of said corporation.
WITNESS my hand and official seal in the County and State last aforesaid this    November 16, 2006

Stephanie N. Nelson  Notary Public
My Commission Expires: 5/14/2011

Prepared By and Return to:
WDAVIS
NETBANK
9710 Two Notch Rd Columbia SC 29223-9884
1(800)-933-2890 Ext. 28103
11/16/2006 1XIS111606A 11/06

NET BANK
9710 TWO NORCH RD
COLUMBIA, SC 29223



Doc ID: 015936590003 Type: OFF
Kind: ASSIGNMENT
Recorded: 06/25/2010 at 11:11:34 AM
Fee Amt: $44.00 Page 1 of 3
Lorain County, Ohio
Judith M Nedwick County Recorder
File **2010-0338265**



EXHIBIT 2

Non-conforming document
Per ORC 317.114
$20.00 fee

LS&R No.: 201009878
CHL



## CORRECTIVE ASSIGNMENT OF MORTGAGE

THIS ASSIGNMENT IS BEING RECORDED TO REPLACE THE ASSIGNMENT THAT WAS RECORDED ON 12/08/2006, IN INSTRUMENT NO. 20060179537 TO REMOVE THE NOTE LANGUAGE.

KNOW ALL MEN BY THESE PRESENTS, that the undersigned, **Netbank**, whose address is 9710 Two Notch Road, Columbia, SC 29223, does hereby sell, assign, transfer and set over unto **Mortgage Electronic Registration Systems, Inc., its successors and assigns**, whose address is 3300 SW 34th Ave., Suite 101, Ocala, FL 34474, a certain mortgage from Roger L. Fuller, a married man, his wife Barbara A. Fuller to Resource Bancshares Mortgage Group, Inc., dated March 12, 1998, recorded March 23, 1998, in Instrument No. 9980524665, in the office of the Lorain County Recorder, and all sums of money due and to become due thereon, and secured by the following real estate:

SITUATED IN THE CITY OF ELYRIA, COUNTY OF LORAIN, AND STATE OF OHIO:

AND KNOWN AS BEING PART OF SUBLOTS NO. 34 AND 35 IN SUMNER B. AND LEE S. DAY'S SUBDIVISION OF PART OF ORIGINAL ELYRIA TOWNSHIP LOTS NO. 69, 70, 71 AND 78, EAST OF BLACK RIVER, AS SHOWN BY THE RECORDED PLAT IN VOLUME 5 OF MAPS, PAGE 12 OF LORAIN COUNTY RECORDS, AND TOGETHER FORMING A PARCEL OF LAND BOUNDED AND DESCRIBED AS FOLLOWS: BEGINNING AT A POINT ON THE EASTERLY LINE OF SUMNER STREET, DISTANCE 90 FEET SOUTHERLY FROM ITS INTERSECTION WITH THE SOUTHERLY LINE OF CLARK STREET; THENCE EASTERLY ON A LINE OF CLARK STREET ABOUT 107 FEET TO THE EASTERLY LINE OF SAID SUBLOT NO. 34; THENCE SOUTHERLY ALONG SAID EASTERLY LINE OF SUBLOT NO. 34, 33 FEET TO THE NORTHERLY LINE OF LAND CONVEYED TO ALFRED P. J. O'DONNELL BY DEED DATED OCTOBER 18, 1917, AND THENCE WESTERLY ALONG THE NORTHERLY LINE OF LAND SO CONVEYED TO ALFRED P. J. O'DONNELL ABOUT 106.1 FEET TO THE EASTERLY LINE OF SUMNER STREET; THENCE NORTHERLY ALONG SAID EASTERLY LINE OF SUMNER STREET 33 FEET TO THE PLACE OF BEGINNING, BE THE SAME MORE OR LESS, BUT SUBJECT TO ALL LEGAL HIGHWAYS.

PROPERTY ADDRESS: 225 Sumner Street, Elyria, OH 44035

IN WITNESS WHEREOF, Netbank has set its hand on the date set forth below.

Netbank

By: _____
\*Printed Name  Mellissa Taylor
\*Title  Assistant Secretary

STATE OF _____
                                                SS.
COUNTY OF  See attached

On _____ before me _____, Notary Public,
State of _____, personally appeared _____,
_____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

*[handwritten diagonal: See attached acknowledgment]*

WITNESS my hand and official seal.

_____
Notary Public
My Commission Expires:

This instrument was prepared by:

LERNER, SAMPSON & ROTHFUSS
A Legal Professional Association
P.O. Box 5480
Cincinnati, OH 45201-5480

## ACKNOWLEDGMENT

State of California )
                     ) ss.
County of Ventura )

On __June 15, 2010__ before me, __Loris Avedisian, Notary Public__
personally appeared __Melissa Taylor, Assistant Secretary__,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
          Loris Avedisian

LORIS AVEDISIAN
Commission # 1749773
Notary Public - California
Ventura County
My Comm. Expires Jun 9, 2011

LERNER SAMPSON & ROTHFUSS
120 E 4TH ST 8TH FLOOR
P O BOX 5480
CINCINNATI, OH 45273-8236

NOTE

MAR 18 1998

PARMA [City]     OHIO [State]

EXHIBIT 3

MARCH 12, 1998

225 SUMNER STREET, ELYRIA, OHIO 44035-
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ __70,000.00__ (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is RESOURCE BANCSHARES MORTGAGE GROUP, INC.
20 N WOODS BLVD UPPER LEVEL, COLUMBUS, OHIO 43235

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 7.500 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the _1ST_ day of each month beginning on _MAY 1, 1998_.

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on _APRIL 1, 2028_, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at _7303 PARKLANE Rd., COLUMBIA, SC 29223_
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ _535.38_

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

### 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of _15_ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be _5.000_ % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

(D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

MULTISTATE FIXED RATE NOTE -Single Family- FNMA/FHLMC UNIFORM INSTRUMENT     Form 3200 12/83
GFS FORM - G000001(5F29) (08/95)     Page 1 of 2     Amended 5/91

RJF

### 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Roger L. Fuller_ (Seal)
ROGER L. FULLER -Borrower
Social Security Number _____

_____ (Seal)
-Borrower
Social Security Number _____

Pay To The Order Of
_____

Without Recourse
_____ (Seal)
-Borrower
Social Security Number _____

_Cindi Callaham_
Cindi Callaham, Senior Vice President
Resource Bancshares Mortgage Group, Inc.

_____ (Seal)
-Borrower
Social Security Number _____

_____ (Seal)
-Borrower
Social Security Number _____

_____ (Seal)
-Borrower
Social Security Number _____

[Sign Original Only]

Page 2 of 2                         Form 3200 12/83

**EXHIBIT 4**

**NOTE**

CERTIFIED TRUE COPY
DATE SENT FOR RECORDING
SIGNATURE

Loan No. _____
FULLER

**EXHIBIT A**

MARCH 12, 1998

PARMA, OHIO
[City] [State]

225 SUMNER STREET, ELYRIA, OHIO 44035
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 80,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is RESOURCE BANCSHARES MORTGAGE GROUP, INC.
40 N WOODS BLVD UPPER LEVEL, COLUMBUS, OHIO 43235
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 7.500 %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

(A) Time and Place of Payments
I will pay principal and interest by making payments every month.
I will make my monthly payments on the 1ST day of each month beginning on MAY 1, 1998.
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on APRIL 1, 2028, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."
I will make my monthly payments at 7909 PARKLANE RD, COLUMBIA, SC 29223
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $ 559.38

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.
I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

### 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

(D) No Waiver by Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

MULTISTATE FIXED RATE NOTE -Single Family- FNMA/FHLMC UNIFORM INSTRUMENT
GFS FORM - G000001(5F29) (06/95)
Page 1 of 2
Form 3200 12/83
Amended 5/91

*RJF*

Loan No. ▇▇▇▇

### 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Roger L. Fuller_ (Seal) -Borrower
ROGER L. FULLER
Social Security Number ▇▇▇▇

_____ (Seal) -Borrower
Social Security Number _____

_____ (Seal) -Borrower
Social Security Number _____

_____ (Seal) -Borrower
Social Security Number _____

_____ (Seal) -Borrower
Social Security Number _____

_____ (Seal) -Borrower
Social Security Number _____

[Sign Original Only]

## Althouse, Philip D.

| | |
|---|---|
| **From:** | Callaham, Cindi [Cindi.Callaham@firstcitizensonline.com] |
| **Sent:** | Tuesday, December 21, 2010 11:08 AM |
| **To:** | Althouse, Philip D. |
| **Subject:** | NetBank |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |
| **Attachments:** | Letter to Philip Althouse 12-21-2010.pdf |





Letter to Philip
Althouse 12-2...

      Here is my response to your letter dated 12/7/2010. I really have not other information to offer.

<<Letter to Philip Althouse 12-21-2010.pdf>>

Cindi Callaham
SVP/Major Vendor Relations & Core System Services First Citizens
Phone: (803) 931-1325
Fax:   (803) 931-8561
cindi.callaham@firstcitizensonline.com

--------------------------------------------------------------------------
*Please note: email address of sender has changed to "firstcitizensonline.com"*

This electronic mail and any files transmitted with it are confidential and are intended solely for the use of individual or entity to whom they are addressed. If you are not the intended recipient or the person responsible for delivering the electronic mail to the intended recipient, be advised that you have received this electronic mail in error and that any use, dissemination, forwarding, printing, or copying of this electronic mail is strictly prohibited. If you have received this electronic mail in error, please immediately notify the sender by return mail.
===========================================================================

1

December 21, 2010

Legal Aid Society of Cleveland
Philip D. Althouse, Attorney
538 W. Broad Street Suite 300
Elyria, OH 44035

RE: NetBank

Mr. Althouse:

I am outlining what I am aware of as far as the use of the blank stamp endorsement with my signature on it:

1) Sometime in the 1990's, RBMG begin using a stamped endorsement with my name on it as I was a Senior Vice President over Mortgage Operations. The PAY TO ORDER OF was left blank. This was acceptable to our investors. All notes were stamped with this blank endorsement before the note was sent to our custodian, JPM Chase. I personally did not stamp the notes as this was done by staff at RBMG that were part of the Warehouse group. JPM Chase was the custodian for all the various warehouse lines that RBMG used and this stamp was required by all our Warehouse Lenders so that their name could be entered into the PAY TO ORDER OF if the Company went out of business. At the time of sale of the loan and consequently the payoff of the loan from the warehouse line, JPM Chase as custodian, completed the PAY TO THE ORDER OF line with the Investor's name or left it blank if the Investor so instructed. Therefore, I am not sure why you have a copy of a note with an endorsement and without an endorsement as all notes should have contained this stamp. However, the Customer's copy of the note would not have contained the blank endorsement stamp as this was a back office requirement related to warehousing and sale of the loan. This process did not change when RBMG merged with NetBank.
2) In 2001, I changed roles and moved from Operations to Cash Management. However, since I was still a SVP employed with the Company, as far as I know, the Company continued to use the stamp with my name on it which would have been acceptable.
3) As far as I know, we never used MERS for the electronic assignment of the note but did register most of the loans in MERS for assignment of the mortgages as this saved the cost of filing paper assignments at the sale of the loan. All loans required assignment of mortgages in addition to the note endorsement and the assignments of mortgages were handled by a different area which is why my name would not have necessarily been on the assignments of mortgages.
4) I do not have any knowledge of what happened to the blank endorsement stamps when the FDIC took the company into receivership. I assume that these are in the possession of the FDIC as I also assume that these stamps were still on the premises at Two Notch Rd at the time of receivership. I personally have not applied the blank endorsement stamp on notes in many years. Any changes/corrections to information on notes and mortgages would have been handled by the FDIC after 9/2007.
5) Outside of what is stated above, I really do not have any additional information.

Sincerely,

Cindi Callaham