IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROGER L. FULLER, *et al.*, | ) | CASE NO. 1:10-CV-2453 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | JUDGE LESLEY WELLS |
| v. | ) | |
| | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| LERNER, SAMPSON, | ) | |
| ROTHFUSS, L.P.A., *et al.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendants, | ) | |

On December 23, 2010, Defendants Lerner, Sampson, Rothfuss, L.P.A. and Nicholas D. Donnermeyer ("Defendants") filed a *Motion To Dismiss* Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 11). Plaintiffs Roger L. Fuller and Barbara A. Fuller ("Plaintiffs" or the "Fullers") filed their opposition to Defendants' motion on February 18, 2011. (Doc. 13). Defendants filed their reply to Plaintiffs' opposition on March 4, 2011. (Doc. 14). Subsequently, Judge Wells referred the matter to the undersigned to issue a report and recommendation. (Doc. 15). Since the issuance of this order, both Defendants and Plaintiffs have notified the Court of their intent to rely upon additional authority. *See* (Docs. 16-19).

## I. FACTS & PROCEDURAL BACKGROUND

The Fullers are residents of Lorain County, Ohio. (Doc. 1 at ¶¶ 3, 4). In April 1995, Mr. Fuller bought a house located at 225 Sumner Street in Elyria, Ohio. (*Id.* at ¶ 7). On March 12, 1998, Mr. Fuller executed a promissory note in favor of Resource Bancshares Mortgage Group, Inc. ("RBMG"). (*Id.* at ¶ 9). The Fullers then executed a mortgage in favor of RBMG. (*Id.*). The

Plaintiffs allege that RBMG was later acquired by Netbank. (Doc. 13 at 147). Netbank then assigned the promissory note and mortgage to Mortgage Electronic Registration Systems Inc. ("MERS") on November 16, 2006. (*Id.* at ¶ 10, Ex. 3). Netbank was subsequently placed into receivership and liquidated in 2007. (Doc 1. at ¶ 11).

On March 3, 2009, Countrywide Home Loans ("Countrywide") filed a foreclosure action against the Fullers in the Lorain County Court of Common Pleas. (Doc. 1 at ¶ 12, Ex. 4). Countrywide was represented by Defendant Lerner, Sampson, and Rothfuss ("LSR"). The Plaintiffs allege that after the case was filed, LSR prepared document assigning MERS's interest in both the Fullers' note and mortgage to Countrywide, and had its employee, Shellie Hill, sign the document, purporting to be the Assistant Secretary and Vice President of MERS. (*Id.* at ¶ 13, Ex. 5). The Plaintiffs allege that Defendant LSR prepared the document. (*Id*.) They also aver that MERS did not record a power of attorney pursuant to Ohio Revised Code § 5309.74 to authorize Hill to transfer its interest and that Hill otherwise lacked authority to negotiate these instruments on behalf of MERS. (*Id.* at ¶ 14). BAC Home Loans Servicing, L.P. ("BAC") was later substituted for Countrywide as the plaintiff in the foreclosure action. (*Id*. at ¶ 15).

At some point, LSR moved for default judgment, presumably because the Fullers had failed to answer the complaint. The court granted the motion on June 15, 2009. (*Id.* at ¶ 16). On July 10, 2009, the Fullers filed a motion seeking to dismiss BAC's complaint, or in the alternative, to reverse the default judgment entered against them. (*Id.* at ¶ 17). BAC then filed a document labeled "Affidavit from the Real Party in Interest" signed by BAC officer Linda Allinson. (*Id.* at ¶ 18, Ex. 6). The affidavit indicated that a true and accurate copy of the Fullers' note was attached to the affidavit. (*Id*. at ¶ 19). Plaintiffs highlight that in paragraph five of the affidavit, Allinson attested

2

that BAC had "purchased" the promissory note and mortgage from MERS, and thereby became the holder of such on July 19, 2007. (*Id*., Ex. 6 at 35). However, the Fullers allege that the MERS report attached to the affidavit contradicted this statement. (*Id*.). They also allege that LSR's employee, Rachel K. Pearson, prepared the affidavit, as evidenced by the fact that the letters "rkp" appeared in the upper left hand corner of the document. (*Id*., Ex. 6 at 34).

Defendant LSR later filed a second affidavit by Allinson. (*Id*. at ¶ 20, Ex. 7). The Fullers allege that the Defendants filed this affidavit after the Fullers filed a brief noting inconsistencies between Allinson's first affidavit and the attached MERS report. (*Id*.). They further allege that the second affidavit removed all reference to BAC purchasing the note and instead asserted that BAC had taken "possession" of the note on July 19, 2007. (*Id.*, Ex. 7 at 53). The second affidavit also indicated that a "true and accurate" copy of the Fullers' note was attached to it. The Defendants do not contest the Fullers' description of the second affidavit.

Prior to ruling on Plaintiffs' motion, Judge James L. Blaszak, the magistrate judge in the underlying action, conducted two oral hearings. (*Id*. at ¶ 21). The first hearing was held on September 18, 2009. (Lorain County Court of Common Pleas, Case No. 09-CV-161000, www.loraincounty.com/clerk, "Lorain Docket 1"). The docket reflects that the judge adjourned the hearing and requested that the parties "submit additional briefs concerning MERS assignment of [the] promissory notes as holders or owners; the break in chain of assignments (Netbank); and subject matter jurisdiction[;] i.e. Plaintiff's standing to commence suit." (*Id*. at 9/24/2009).

The parties reconvened on January 29, 2010 for a second oral hearing. (*Id*.; Doc. 1 at ¶ 21). At this hearing, BAC produced what they now allege was the original promissory note. (Doc. 11 at 128, Ex. A). However, on February 2, 2010, Judge Blaszak granted the Fullers' motion to vacate

3

the default judgment entered against them. (Lorain Docket 1 at 2/02/2010; Doc. 1 at ¶ 21). On February 19, 2010, BAC dismissed the action without prejudice. (Doc. 1 at ¶ 22; Lorain Docket 1 at 3/04/2010). The Fullers aver that during the pendency of this action, BAC never established that it held their note at the time the action was commenced or that it was the proper owner of the debt. (Doc. 1 at ¶ 24).

The Fullers allege that following the dismissal of the case, the Defendants arranged for the unauthorized execution of a pair of corrective mortgage assignments on behalf of BAC. (*Id*. at ¶¶ 25-27). First, on June 15, 2010, Melissa Taylor, allegedly acting as the Assistant Secretary of Netbank, executed a corrective mortgage assignment from Netbank to MERS (hereinafter the "first corrective mortgage assignment"). (*Id.* at ¶ 25, Ex. 8). This corrective assignment removed all references to the Fullers' note which were in the original assignment of the mortgage from Netbank to MERS. (*Id.*). The document was recorded by the Defendants on June 25, 2010. (*Id*.). The Fullers allege that Taylor was not an employee of Netbank at the time of the assignment, but rather, an employee of Bank of America in the greater Los Angeles, California area and, thus, that the corrective assignment was fraudulent. (*Id.* at ¶ 26, Ex. 9; Doc. 13. at 153).

Next, the Fullers allege that Defendant LSR recorded a second corrective mortgage assignment on June 25, 2010 (hereinafter the "second corrective mortgage assignment"). (*Id*. at ¶ 27, Ex. 10). They contend that this instrument omitted all references to the Fullers' note which were in the original assignment from MERS to Countrywide executed by Hill in November 2006. (Doc. 1. at ¶ 27, Ex. 10). The Fullers also allege that this document was prepared by Defendant LSR and that it was notarized by Shelly R. Dirr, an employee of Defendant LSR. (*Id.*).

4

On July 13, 2010, Defendant Nicholas D. Donnermeyer, an attorney at Defendant LSR, filed a second complaint against the Fullers on behalf of BAC. (Doc. 1 at ¶ 28, Ex. 11). The Fullers allege that a copy of the Fullers' promissory note, allegedly indorsed in blank by Cindy Callaham, the Senior Vice President of RBMG, was attached to the complaint. (*Id.* at ¶ 30, Ex. 11 at 82). However, they note that this indorsement did not appear in any of the certified copies of the note filed in the first suit. (*Id.*). Copies of the two corrective mortgage assignments and the mortgage were also attached to the second complaint. (*Id.*). The Fullers allege that Callaham's indorsement on the mortgage was not valid, but was an artifice to provide BAC with a facially valid complaint. (*Id.* at ¶ 33).

The Fullers allege that the Federal Home Loan Mortgage Corporation ("Freddie Mac") currently owns their mortgage and note, not BAC. (*Id.* at ¶ 32). They contend that the Defendants had knowledge of this information but failed to mention it in their pleadings. (*Id.*).

The parties settled the second foreclosure action in September 2011 and a notice of dismissal was filed in November 2011. (Lorain County Court of Common Pleas, Case No. 10-CV-168319, www.loraincounty.com/clerk, at 9/23/2011, 11/10/2011).

On October 28, 2010, the Fullers filed the instant claim against the Defendants pursuant to the Federal Debt Collection Practices Act, 15 U.S.C. § 1692.

## II. LAW & ANALYSIS

A. Standard of Review for 12(b)(6) Motion

Under the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to satisfy this requirement is subject to dismissal under Fed. R. Civ. P. 12(b)(6).

5

Previously, the standard for a motion to dismiss for failure to state a claim upon which relief can be granted was that the motion establish, beyond a reasonable doubt, that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Wright v. Metrohealth Med. Ctr.*, 58 F.3d 1130, 1138 (6th Cir. 1995), *cert. denied*, 516 U.S. 1158 (1996). However, in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007), a case involving complex antitrust litigation, the Supreme Court modified the standard, particularly the "no set of facts" phrasing.

The Court's ruling in *Twombly* abrogated *Conley*, and moved away from the pure notice pleading standards that had previously been a hallmark of the Civil Rules. *See, e.g., Twombly*, 550 U.S. at 572-88 (Stevens, J., dissenting); *see also Frost v. Boyle*, No. 1:06-CV-2649, 2008 WL 650323 (N.D. Ohio Mar. 5, 2008) (Oliver, J.) (*Twombly* abrogated *Conley* standard). Instead, the Court emphasized that the plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. The Court further commented that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Court clarified that the new Twombly standard was not intended to be limited only to complicated litigation. The Court summarized the new "plausibility" standard by stating:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a

6

complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, *supra*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 557). Thus, when ruling on a motion to dismiss, a court must now analyze the plaintiff's complaint on a possibility-plausibility-probability continuum. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. *Miller v. Curie*, 50 F.3d 373, 377 (6th Cir. 1995). "All of the allegations contained in the plaintiff's complaint are accepted as true, and the complaint is construed liberally in favor of the party opposing the motion." *Id.* (citing *Mertik v. Blalock*, 983 F.2d 1353, 1356 (6th Cir. 1993)). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 129 S. Ct. at 1950 (quoting *Twombly*, 550 U.S. at 555).

B. Matters Outside the Pleadings

Pursuant to Federal Rule of Civil Procedure 12(d), "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment." Fed. R. Civ. P. 12(d). Accordingly, when ruling on a motion to dismiss, a court may not consider evidence outside of the pleadings, *Rondigo, L.L.C. v. Twp of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (citing *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir.2010)), but, the court may consider other evidence appearing in the record if that evidence is "mentioned in the complaint and is central to the claims contained therein." *Id.* at 680-681 (*quoting Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008)). The

7

court may also consider documents that are public records without converting the motion to dismiss into a motion for summary judgment.  *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).

Attached to the Defendants motion is a one page excerpt from the second oral hearing held before Judge Blazsak.  The Fullers mentioned this hearing at paragraph 21 of their complaint.  The Defendants allege that this excerpt shows that their client had possession of the original note with a blank indorsement from RBMG during the pendency of the first foreclosure suit.  Because the oral hearing is mentioned in the Fullers' complaint and because this evidence is central to the Plaintiffs claims, the undersigned will consider the excerpt in its review of the Defendants' motion.  *See Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).  Additionally, the Court will consider the information listed in the dockets of the two underlying foreclosure cases, as well as the journal entry, (Doc. 14-1), attached to the Defendants' reply brief, as these documents are all public records.  *See New England Health Care*, 336 F.3d at 501.

On the other hand, the exhibit attached to the Plaintiffs' opposition brief is not properly before the Court as it was not referenced in the complaint.  Plaintiffs attached an affidavit from Ms. Cindi Callaham, along with correspondence between their attorney and Ms. Callaham to their opposition brief.  Although the complaint references Ms. Callaham's indorsement on the note filed in the second suit and alleges that it was not valid, the complaint does not reference any affidavit prepared by Ms. Callaham.  Therefore, these exhibits will not be considered by the Court.

## C.  Fair Debt Collection Practices Act

The Fair Debt Collection Practices Act (the "FDCPA") provides that "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the

collection of any debt." 15 U.S.C. § 1692e (2006). In order to state a claim for a violation of the FDCPA, a plaintiff must show that (1) he/she is a consumer as defined by the act; (2) the debt arose out of a transaction entered into "primarily for personal, family, or household purposes"; (3) the defendant is a "debt collector" as defined by the act; and (4) the defendant violated a provision of the FDCPA. *Whittiker, et al. v. Deutsche Bank Nat'l Trust Co.*, 605 F.Supp.2d 914, 926 (N.D.Ohio Mar. 17, 2009).

The Defendants do not contest that the Fullers are consumers, that the debt owed arose in a transaction entered primarily for household purposes, or that they constitute as debt collectors under the FDCPA. Therefore, the first three requirements are satisfied. However, the Defendants contend that the Fullers' claim fails because the Plaintiffs cannot show that the Defendants violated a provision of the FDCPA. Thus, the only issue is whether the Fullers have stated sufficient facts to state a plausible claim that the Defendants violated the FDCPA.

Violations of the FDCPA are evaluated using the least sophisticated consumer test. *Turner v. Lerner, Sampson, & Rothfuss*, 776 F. Supp. 2d 498, 505 (N.D. Ohio 2011) (citing *Lewis v. ACB Bus. Servs, Inc.*, 135 F.3d 389, 400 (6th Cir. 1998)). Under this objective standard, "a false statement that is not deceptive applying the objective 'least sophisticated consumer test' is not a violation of the FDCPA." *Whittiker*, 605 F.Supp 2d at 926 (*citing Lewis*, 135 F.3d at 401-01). In determining whether the test is satisfied, the Court must analyze the defendant's alleged conduct from the perspective of an unsophisticated consumer. *Id*.

### D. Violation of FDCPA

The Defendants are correct that Freddie Mac's supposed ownership of the note and mortgage would not hinder BAC from instituting a foreclosure action if it were the holder of the

9

note. Under the Ohio Revised Code, a person may be "entitled to enforce [an] instrument even though the person is not the owner of the instrument. . . ." O.R.C. § 1303.31(B) (2010); *see also Deutche Bank Nat.'l Trust Co. v. Hansen*, No. 2010-CA-1, 2011 WL 899625, at *6 (Ohio App. 5 Dist., Mar. 10, 2011). However, this does not mean that the Fullers' complaint fails. The Fullers also allege that the Defendants engaged in other conduct prohibited by the FDCPA.

### 1. BAC's Status As a Holder of the Note

The Defendants claim that filing suit against the Fullers did not violate the FDCPA because BAC was the holder of the Fullers' note and as a holder, was entitled to enforce the note. Under Ohio law, an indorsement in blank converts a note into bearer paper and confers holder status on anyone with physical possession of the note. O.R.C. § 1303.25(B) (2010); see also *In Re Smoak*, 461 B.R. 510, (Bankr. S.D. Ohio 2011) and *Deutsche Bank Nat'l Trust Co. v. Traxler*, No. 09-CA-9379, 2010 WL 3294292, at *4 (Ohio App. 9 Dist. Aug. 23, 2010); s*ee also* O.R.C. § 1303.31 (2010) (stating that a holder of the instrument is entitled to enforce the same). According to the Defendants, Cindi Callaham indorsed the note in blank converting it to bearer paper. The Defendants claim that BAC was in possession of this note and therefore was a holder entitled to enforce it.

To prove that BAC had possession of this instrument during the pendency of the first action, the Defendants contend that they produced the original indorsed note during the January 29, 2010 oral hearing before Judge Blaszak. The sole evidence that the Defendants offer to support this claim is a one page excerpt from the transcript of the hearing wherein Romi Fox, an attorney employed by Defendant LSR, had the following exchange with Judge Blazsak:

| | | |
|---|---|---|
| Ms. Fox: | And I have the note, your Honor. I have the original note with me. Our client has had it in its possession all along. |
| The Court: | How does the court know that? |
| Ms. Fox: | Well, it says it's the holder of the note in its complaint. |
| The Court: | Prior to the default hearing. |
| Ms. Fox: | It says it in its complaint, in paragraph one, that it is the holder of the note. |
| The Court: | It's an allegation. |
| Ms. Fox: | Well - - |
| The Court: | Okay. |
| Ms. Fox: | Okay. |

This excerpt does not sufficiently demonstrate that the Defendants were in possession of a *validly indorsed* note. The transcript does not reflect that the note was indorsed. It merely indicates that Defendants claimed to possess the original note. In fact, the document is silent as to whether the note was indorsed in blank or not.

At this stage of the proceeding, the court is only being asked to determine whether the Plaintiffs have provided enough facts to state a plausible claim against the Defendants. The Fullers dispute the assertion that the Defendants' client ever held a *validly* indorsed note. They submit that neither the certified true copies of the note attached to the complaint in the first foreclosure action nor those attached to Allinson's affidavits reflected any indorsement by RBMG to convert the note into bearer paper and thereby make BAC a holder. The Fullers maintain that without such an indorsement, BAC could not be viewed as a holder of the note.

The Defendants argue that their failure to attach a copy of the indorsed note to the initial complaint was not deceptive or misleading because they later came forward with the original note showing RBMG's indorsement in blank.  The Defendants contend that the copy of the note attached to their original complaint was the "customer copy" of the note made at origination.  They assert that because indorsement is a "back office" process done after origination, the "customer copy" did not reflect this indorsement.  Relying upon *Traxler*, the Defendants submit that providing the indorsed copy of the note at a later time complied with applicable case law and was not misleading. 2010 WL 3294292, at *4.

The undersigned notes that the Defendants' argument is *at least* partially based upon the affidavit of Cindi Callaham – evidence which the Court has already determined was not properly before the Court.  Nevertheless, in *Whittiker*, this Court explained that "[t]he filing of a foreclosure action by a plaintiff in the process of obtaining an assignment not yet fully documented is not a deceptive, misleading, or abusive tactic and does not violate the FDCPA." *Whittiker*, 605 F. Supp. 2d at 931.  Accordingly, the Court agrees with the Defendants that the mere failure to file an indorsed copy of the note with their initial complaint did not violate the act.  But, *Whittiker* outlined an exception to this general rule.  It held that a FDCPA complaint would survive a motion to dismiss where the plaintiff alleged that "the plaintiff in the underlying collection action [i.e. the foreclosing party] asserted it was the owner of the debt 'all the while knowing that they did not have means of proving the debt.'"  *Id*. at 929 (*quoting Delawder v. Platinum Fin. Serv*., 443 F. Supp. 2d 942, 945 (S.D. Ohio 2005)).

The Fullers make this exact claim.  They allege that the Defendants did not merely file the claim while they were in the process of obtaining the assignment.  Rather, they argue that LSR

12

maintained the first action and commenced the second action all while "knowing that they did not have the means to prove that the debt was owed to their client [BAC]".  (Doc. 1 at ¶ 34).  Even though the Defendants claim to have presented the original note at the oral hearing in the first suit and again with its complaint in the second suit, the evidence the Defendants have presented to the Court today does not establish that they were in possession of the original, validly indorsed note during the pendency of the first suit.

The Defendants asserted that the copies of the notes in both underlying actions were true and accurate, yet, the faces of the documents are different.  Plaintiff alleges that the indorsed note attached to the second complaint was an artifice. This claim has some support in the record.  It is curious that none of the certified copies of the note the Defendants filed in the first foreclosure action contained any indorsement from RBMG, and that the so-called "back office" copy with the blank indorsement did not openly manifest until the filing of the second action.  It is unlikely that the Defendants would have mistakenly filed the "customer copy" of the note three times.  This is not to say that the Defendants will not ultimately be able to show that their client had possession of the original indorsed note or that it was validly indorsed by RBMG.  But, construing all inferences in favor of the Fullers, such facts support their claim that the Defendants knew that their client did not hold a validly indorsed copy of the note during the pendency of the first proceeding, and that despite this knowledge proceeded with the foreclosure action.  In addition, assuming that the facts alleged by the Plaintiffs are true – that the note filed as an exhibit to the second complaint (indorsed in blank by RBMG) was an artifice to provide BAC with a facially valid pleading — the Fullers

13

have stated a valid claim.[1]  *See Hartman v. Asset Acceptance Corp.*, 467 F.Supp.2d 769, 779 (S.D.Ohio 2004) (finding that the FDCPA applies to false statements and representations made in documents filed in legal proceedings).

Even if the undersigned were to assume that the promissory note filed in the second action was legitimate, the Fullers FDCPA claim would stand because the Fullers also claim that the Defendants filed other deceptive and misleading documents in their attempt to collect on their client's debt. For instance, the Plaintiffs allege that in both actions, the Defendants filed deceptive and misleading assignments signed by Shellie Hill, purporting to be the Assistant Secretary and Vice President of MERS, even though Hill was actually employed by Defendant LSR. While holding the original promissory note may have entitled the Defendants to move forward with foreclosure proceedings, it did not obviate the Defendants' responsibility to conduct its business within the bounds of the FDCPA. Thus, filing false, deceptive and misleading documents in connection with its rightful foreclosure suit would still seemingly be actionable under the FDCPA. *See id*.

---

[1] Plaintiffs also argue that without possessing the mortgage assignment at the time of filing, BAC lacked standing to file the underlying foreclosure actions. (Doc. 13 at 148). This issue is separate and distinct from whether such conduct was violative of the FDCPA. Apparently, there is split between the county courts in Ohio as to whether a plaintiff has standing to sue without such proof. The Defendants submitted evidence showing that this question was certified to the Ohio Supreme Court on January 31, 2011. (Doc. 14-1). However, on September 21, 2011, the Ohio Supreme Court dismissed the case as moot without speaking on the issue. *See U.S. Bank Nat'l Ass'n v. Duvall*, 129 Ohio St.3d 1479, 953 N.E.2d 844 (Table) (2011). Because this particular issue is not determinative of whether the Defendants' motion should be granted, it is not necessary for the undersigned to express a view on the matter for purposes of ruling on the motion. However, the Court notes, as do the Defendants, that this court has previously rejected the notion that standing in Ohio is jurisdictional. *See Whittiker*, 605 F.Supp.2d at 929, n.18 ("In Ohio, . . . standing is not jurisdictional but may be cured by substituting the proper party so that a court otherwise having subject matter jurisdiction may proceed to adjudicate the matter.").

14

2. BAC's Status as a Holder of the Mortgage

Because the Fullers challenge whether BAC ever held a validly indorsed note to confer "holder" status upon it, the Defendants cannot successfully rest upon BAC's supposed status as a holder to argue that it was entitled to enforce the mortgage as an incident of enforcing the note. Even if the Court were to credit the case law cited by the Defendants indicating that the transfer of the note also transfers the mortgage – which the undersigned does not now decide – this issue would only be relevant once it was determined that BAC was the holder of the note. Consequently, the Plaintiffs' attacks on BAC's status as holder of the note likewise taint the Defendants' ability to argue that BAC was entitled to enforce the mortgage by way of the note.

Although the Defendants alternatively contend that their clients were entitled to enforce the mortgage by way of an assignment from MERS to BAC, the Fullers complaint also attacks the validity of the instruments used to assign this right to BAC. The Defendants assert that BAC had been assigned the right to enforce the Fullers' mortgage by MERS in the second corrective mortgage assignment. But, the Fullers allege that both corrective assignments were deceptive and fraudulent.

The Fullers contend that the first corrective mortgage assignment, which purported to assign the Fullers' mortgage from Netbank to MERS, was fraudulent on its face because it was executed by an unauthorized signatory. The instrument shows that on June 15, 2010, Melissa Taylor signed the document on behalf of Netbank, but the Fullers allege that Netbank was defunct on this date, and that Ms. Taylor was working for a different entity, Bank of America, at the time she executed the instrument. Accordingly, they argue that Ms. Taylor could not have signed this document on Netbank's behalf. They further argue the Defendants compounded this fraud by filing this

15

fraudulent document in the second foreclosure action. If these assertions are proven true, such conduct is actionable under the FDCPA. *See Hartman*, 467 F.Supp.2d at 779.

The Plaintiffs also contest the legitimacy of the second corrective mortgage assignment which assigned the Fullers' mortgage from MERS to Countrywide. This assignment was executed by Shellie Hill. The Fullers allege that Hill was employed by Defendant LSR, not MERS, and lacked authority to negotiate the mortgage on behalf of MERS. This type of conduct is sufficient to expose the Defendants to liability under the FDCPA. Though the complaint also suggested that Hill's actions were in not in accordance with Ohio Revised Code § 5309.74, this statute is not applicable because it pertains only to interests in registered land.

The Defendants should not be surprised by the undersigned's ruling today. This case is very similar to another case wherein Defendant LSR was accused of engaging in conduct akin to the allegations now before the Court in violation of the FDCPA. *See Turner,* 776 F.Supp.2d at 506 (Gwin, J.). The plaintiffs in *Turner* alleged that LSR employed individuals who executed assignments of notes without proper legal authority to do so, and filed false and misleading affidavits in the underlying cases. *Id*. at 501-02. The court denied LSR's motion to dismiss the complaint finding that, if proven true, the conduct would be actionable under the FDCPA in accordance with *Whittiker* and *Delawder*. *Id.* at 506 ("not only do the Plaintiffs allege that the Defendant filed the foreclosure actions knowing that it did not have the means of proving the ownership of the debt; they also allege that the Defendant knowingly executed misleading affidavits and unauthorized assignments of the notes to their clients").

The allegations in the Fullers' complaint align with those made by Turner. They allege the Defendants instituted and maintained foreclosure actions against them even though the Defendants

16

knew that they did not have a means to prove the debt, and knowingly participated either in the creation, execution and/or filing of misleading affidavits and assignments. Therefore, the Fullers have set forth sufficient facts to state a plausible claim that the Defendants violated the FDCPA. *See id*.

### E. Standing to Challenge Assignments

The Defendants allege that the Fullers lack standing to challenge the transfer of their note or mortgage. For this argument, the Defendants primarily rely on *Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*., 399 F. App'x 97, 102 (6th Cir. 2010) to argue that "a litigant who is not a party to an assignment lacks standing to challenge that assignment".

However, this case is distinguishable from the matter at hand. First, *Livonia* did not involve a FDCPA claim. Rather, the plaintiff sought a preliminary injunction of foreclosures which the defendant had instituted against it. *Id*. at 98-99. Second, while the court held that the plaintiff did not have standing to challenge the assignments in question because it was not a party to the instrument, the court noted that an obligor may raise as a defense any matter which renders an assignment invalid, ineffective or void in order to protect itself from paying the same debt twice. *Livonia*, 399 F. App'x at 102; *see also Bridge v. Aames Capital Corp.*, No. 1: 09 CV 2947, 2010 WL 3834059, at *4 (N.D.Ohio Sept. 29, 2010). The Sixth Circuit found that the plaintiff lacked standing to contest the assignments in question because the defendant had already fully established to the district court that it held the original note. *Livonia*, 399 F. App'x at 102. Therefore, the court ruled that the plaintiff could not genuinely claim that the defendant was not the owner, consequently exposing plaintiff to double liability on the debt. *Id*.

17

In the instant case, the Fullers challenge whether BAC was the rightful holder of the debt. Plaintiffs contend that the note and mortgage were owned by Freddie Mac and that they were "very fearful about whether an entity other than BAC would claim an interest in their property" after the first action was dismissed. (Doc. 1 at ¶ 23). Unlike in *Livonia*, the lower court here never established whether BAC was the rightful owner or holder of the debt in question. Therefore, the Fullers have standing to challenge the assignments as there is an arguable concern that Plaintiff could be subject to paying the same debt twice.

Lastly, the undersigned is mindful that the Plaintiffs are pursuing claims under the FDCPA. The Fullers argue, *inter alia*, that the assignments were invalid because they were executed by Defendant LSR's employees without proper authority to do so. Although the Fullers were not parties to these assignments, in *Turner*, this Court found such conduct actionable under the FDCPA and permitted the plaintiffs to proceed with such claims. *See* 776 F.Supp.2d at 506; *but cf. Turner v. Lerner, Sampson & Rothfuss*, No. 11-CV-56, 2011 WL 1357451, at *1-2 (N.D.Ohio Apr. 11, 2011) (ruling that the plaintiffs did not have standing *to seek an injunction* on behalf of third parties) (emphasis added).[2]

### F. Attorney Liability for Representations of Client

The Defendants argue that, even if BAC was not entitled to enforce the note and the Fullers have standing to sue, law firms and attorneys are entitled to rely on the representations of their client without incurring liability. *See Clark v. Capital Credit & Collection Serv., Inc.*, 460 F.3d

---

[2] The undersigned notes that the facts and posture of *Turner* were distinct from that now before the Court. In *Turner,* none of the plaintiffs were at risk of *their* homes being sold and there was no allegation that any of the plaintiffs would be affected by the sale of the homes in question. *Turner*, 2011 WL 1357451, at *2. Thus, the Court ruled that the plaintiffs did not have standing to seek a preliminary injunction on behalf of these third parties because the plaintiffs could not show they had a legal right to assert claims on behalf of a third party or that they would suffer any personal injury from the sale of these homes. *Id.*

1162, 1177 (9th Cir. 2006) and *Chaudry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999). The Defendants contend that they relied on their client's assertion that it was the holder of an indorsed copy of the Fullers' promissory note. The Defendants assert that even if the blank indorsement on the note was invalid, they cannot be held liable for any misrepresentations made by their client.

The Defendants' argument relies entirely on case law from outside the Sixth Circuit. Yet, assuming that these cases are good law in the Sixth Circuit, the Defendants' argument must be rejected as the Fullers allege that the Defendants did more than merely passively rely on BAC's claim to be the rightful holder of the debt. The Fullers allege that the Defendants actively engaged in deceptive conduct by preparing, executing and filing misleading affidavits with the lower court and arranging unauthorized assignments of the note and mortgage in favor of their client. This manner of conduct is adequate to expose the Defendants to liability under the FDCPA. *See Turner*, 776 F. Supp. 2d at 506.

### G. Statute of Limitations

Defendant LSR contends that part of the Fullers' claim is barred by the FDCPA statute of limitations. The FDCPA establishes a one year statute of limitations for any claim that arises under the act. 15 U.S.C. § 1692k(d) (2006). Because the Fullers filed their complaint on October 28, 2010, they are barred from asserting any FDCPA claims that arose before October 28, 2009 — namely the filing of the first foreclosure action on March 3, 2009.

Although they appeared to do so in their complaint, the Fullers do not now challenge the Defendants' commencement of the original foreclosure suit. Instead, they allege that the Defendants violated the FDCPA only by maintaining the first action after October 28, 2009 and filing and maintaining the second foreclosure suit while knowing that its client had no means to prove the

debt.  This conduct falls within the one-year period prior to the filing of the instant complaint, and is actionable under the FDCPA.

### III.  CONCLUSION

For the foregoing reasons, the undersigned recommends that the Defendants' *Motion to Dismiss*, (Doc. 11), be DENIED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date:  May 14, 2012.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).